**ALFA LAVAL SEPARATION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Westfalia Separators, Inc., Defendant–Intervenor.**

No. 97–536C.

United States Court of Federal Claims.

Aug. 14, 2000.

P. David Richardson, Washington, DC, for plaintiff.

Monica J. Palko, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant. Neil Hirsh and Gary Van Osten, Department of the Navy, of counsel.

L. James D'Agostino, Washington, DC, for defendant-intervenor. Jason P. Matechak, Reed Smith Shaw & McClay, LLP, of counsel.

### OPINION

MILLER, Judge.

This case is a post-award bid protest brought by a contractor that was not awarded a requirements contract and unsuccessfully sued to enjoin contract performance in the United States Court of Federal Claims.

Following consideration of the contractor's appeal, the Federal Circuit "remanded for further proceedings consistent with [its] opinion." *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1368 (Fed.Cir. 1999), *petition for reh'g denied,* No. 98–5087 (Fed.Cir. July 26, 1999). Plaintiff and defendant advised this court that they read the remand to order two different resolutions, and the court ordered briefing by all three parties. The court now considers whether the Federal Circuit issued a prejudice determination; what significance, if issued, that prejudice determination bears; to what "further proceedings" the Federal Circuit was referring in its remand; and whether the contractor is entitled to proposal preparation costs. The court rules that, because the Federal Circuit found prejudice, further inquiry is not appropriate; that the contractor is entitled to an order prohibiting the agency from fulfilling its requirements on this contract other than with plaintiff; and that plaintiff, at this date, may not amend its complaint to recover proposal preparation costs.

### FACTS

A recapitulation of the procedural and procurement histories to date is essential to address the legal issues on remand. Facts not reiterated here can be found in *Alfa Laval Separation, Inc. v. United States,* 40 Fed.Cl. 215 (1998), *rev'd,* 175 F.3d 1365 (Fed. Cir.1999).

For more than 20 years, Alfa Laval Separation, Inc. ("plaintiff"), was the sole-source provider of centrifugal purifiers to the United States Department of the Navy. During 1996 plaintiff informed the Navy that certain purifiers were beyond repair and could be replaced for approximately $350,000.00 per unit, or approximately $18.9 million in total. Eschewing sole-source procurement based on such a high cost, the Navy opened the procurement to competitive bidding.

Of the six potential offerors, only two, plaintiff and Westfalia Separators, Inc. ("intervenor"), submitted proposals. Plaintiff submitted three proposals, the least expensive of which would have cost the Navy $19.4 million, a cost higher than that which caused the Navy to have the contract bid competitively. Intervenor's proposal came in at approximately $13.7 million. The Navy awarded the purifier contract to intervenor on July 3, 1997.

On August 8, 1997, plaintiff filed an application for a temporary restraining order and a motion for a preliminary injunction to enjoin the Navy from acquiring centrifugal purifiers from intervenor by means of the contract. On August 13, 1997, a hearing was held at which the court had planned to receive evidence on plaintiff's application for a temporary restraining order. As of this date, the Navy had ordered eight purifiers from intervenor. The value of this order was approximately $1,893,000.00. Prior to the hearing, however, the parties had entered

into an agreement whereby plaintiff would withdraw its application for a temporary restraining order, and the Navy would neither place any further orders nor accept any previously ordered purifiers procured under the contract pending decision on plaintiff's complaint. This agreement was memorialized in an August 14, 1997 consent order.

During trial held in January 1998, the court granted defendant's and intervenor's motion pursuant to RCFC 52(c) for a judgment on partial findings. The only issues that remained open were Type II vibration testing and compliance with market acceptability criteria. On January 23, 1998, the court issued an opinion that found a clear violation of an applicable procurement statute and regulation. Recovery nonetheless was denied because the violation did not amount to a prejudicial violation. Based on the "colossal" price disparity between the two offerors and, more importantly, on plaintiff's proposal price, which was higher than the sole-source price that precipitated competitive bidding, the court determined that plaintiff had not demonstrated a reasonable likelihood that it would have received the contract in the absence of Navy wrongdoing. *See Alfa Laval,* 40 Fed.Cl. at 234–35. Judgment entered on January 26, 1998.

Plaintiff filed its notice of appeal on March 10, 1998. On May 7, 1999, the Federal Circuit reversed the judgment entered on this court's opinion and on July 26, 1999, denied defendant-appellee's petition for rehearing. The Federal Circuit issued its mandate on August 2, 1999. On August 4, 1999, this court vacated the judgment and ordered the parties to file a joint status report by August 23, 1999.

The parties requested, and were granted, an extension to file the status report until August 30, 1999. This status report indicated that, by agreement, the Navy was enjoined from ordering any more purifiers from intervenor. Defendant made additional representations, including that the Navy intended to make no further purchases under the contract because of a change in requirements and that the contract need not be terminated because it was an indefinite quantity contract, the minimum requirement of which had been met. Plaintiff claimed entitlement under the Federal Circuit decision to an injunction preventing further orders from intervenor and the installation of previously delivered but uninstalled purifiers, a termination for convenience of the contract, an award of the contract to plaintiff, and an award of a pro rata share of it proposal preparation costs related to the number of purifiers delivered by intervenor.

On September 3, 1999, the court ordered a September 16, 1999 status conference. On September 17, 1999, the court memorialized an agreement by defendant, on behalf of the Navy, neither to purchase nor to order purifiers from intervenor under the contract pending further order of the court and ordered briefing on the remand issues. By November 12, 1999, defendant was to file its brief after consultation with plaintiff's counsel as to the issues that defendant should address. By December 15, 1999, plaintiff was to respond; by January 5, 2000, defendant, to reply.

On November 3, 1999, the parties requested an extension of time to pursue settlement. Two days later, the court granted the extension, permitting defendant to file its brief, or an informal notice of settlement discussions, by November 24, 1999. On November 24, 1999, the parties notified the court of their settlement discussions and indicated that a further report would be provided by December 8, 1999. On November 30, 1999, the court ordered that the parties file a status report by December 8, 1999, stating with particularity the status of settlement.

The parties notified the court of the particulars of ongoing settlement discussions on December 8, 1999. They had reached agreement as to nonmonetary relief. As to monetary relief, defendant was willing to entertain a proposal from plaintiff, which was to provide its proposal and basis therefor to defendant by December 10, 1999. The parties requested that they be permitted to notify the court by January 11, 2000, as to whether they had reached terms upon which settlement could be finalized. On December 10, 1999, the court ordered a status report to be filed by January 14, 2000.

**308**

In a January 14, 2000 status report, the parties represented that plaintiff had made a monetary offer and that defendant had made a counter-offer on January 12, 2000. The parties requested until February 14, 2000, to continue settlement discussions. On January 18, 2000, the court ordered the parties to file a status report by February 14, 2000, which status report recounted a disparity between the monetary proposals and declared that settlement did not appear possible.

On February 16, 2000, the court ordered the parties to file their proposed briefing schedule by February 25, 2000. The court adopted their briefing schedule by order entered on February 28, 2000. By April 11, 2000, defendant was to file its brief on remand; by May 11, 2000, plaintiff, its response; by May 31, 2000, defendant, its reply.

On April 11, 2000, defendant moved for an unopposed extension of time. In an April 11, 2000 order, the court modified the briefing schedule. By May 2, 2000, defendant was to file its brief; by June 2, 2000, plaintiff, its response; and by June 19, 2000, defendant, its reply. On May 2, 2000, defendant filed its brief. On May 15, 2000, plaintiff filed an unopposed motion for an extension of time by which plaintiff's response would be due on June 23, 2000. On May 16, 2000, the court granted the extension. On June 26, 2000, plaintiff, by leave of court, filed its final brief, and on July 14, 2000, defendant filed its reply. Plaintiff filed a surreply on July 27, 2000. Intervenor made filings on the same schedule as defendant.

In short, the parties elected to use the period following remand to attempt settlement and to file briefs according to their agreed-upon schedule.

**DISCUSSION**

**1. *The remand***

The Federal Circuit began its opinion by stating that "[b]ecause [plaintiff] has demonstrated a significant prejudicial error in the procurement process, we reverse and remand." *Alfa Laval,* 175 F.3d at 1366. The Federal Circuit noted that to establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Id.* at 1367 (quoting *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir. 1996)). The court concluded, "[Plaintiff] contends, and we agree, that the Navy's error was prejudicial.... [I]t was error to find that [plaintiff], the incumbent, responsible supplier, had no 'substantial chance' to receive the contract award absent the Navy's error in awarding the contract to [intervenor]." *Id.* at 1368. The Federal Circuit rejected this court's determinations that considerations of price and the context of the pricing were sufficient to conclude that plaintiff had no substantial chance to receive the contract. *See id.* Yet the court continued, "But while price differential may be taken into account, it is not solely dispositive; we must consider all the surrounding circumstances in determining whether there was a substantial chance that a protester would have received an award but for a significant error in the procurement process." *Id.* Finally, the court "remanded for further proceedings consistent with this opinion." *Id.*[1]

Defendant and intervenor contend that the remand left open the issue of whether the "surrounding circumstances" amounted to prejudice, that is, whether the Federal Circuit remanded for further proceedings on the

1. The court respectfully points out that until the appellate opinion in this case, a showing of prejudice had never been required when a protester challenged a procurement as arbitrary, capricious, or an abuse of discretion—in short, lacking a rational basis. *See Scanwell Lab., Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.Cir.1970). In contrast, as an alternative, a protester could show a clear and prejudicial violation of an applicable procurement statute or regulation. *See CACI Field Servs., Inc. v. United States,* 854 F.2d 464, 466 (Fed.Cir.1988). *Compare CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1572–74 (Fed.Cir.1983) (adopting *Scanwell*); *Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147, 1153 (Fed.Cir.1994) (setting forth arbitrary and capricious standard without a requirement of showing of prejudice); *and Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996) (setting forth standard of prejudicial violation of applicable procurement statute or regulation), *with OMV Medical, Inc. v. United States,* 219 F.3d 1337, 1343–44 (Fed.Cir.2000) (remanding for a determination of whether an "irrational" comparison occurred and whether such comparison "was prejudicial").

issue of prejudice. *Alfa Laval,* 175 F.3d at 1368. The bulk of defendant's and intervenor's arguments on prejudice devolve to an inquiry into plaintiff's compliance with the solicitation.

Even though defendant and intervenor are correct that this court did not make a determination as to plaintiff's overall compliance with the solicitation, the court declines defendant's and intervenor's invitations to determine on remand whether plaintiff's proposal was compliant with the Government's requirements.[2] "[T]he procurement process itself is not on trial, and the court's function is not to second-guess the procurement process." *E.W. Bliss Co. v. United States,* 33 Fed.Cl. 123, 135 (1995) (citing *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 579, 492 F.2d 1200, 1207 (1974)), *aff'd,* 77 F.3d 445 (1996). As plaintiff declares, such a legal requirement "impermissibly expands the burden on protesters to show prejudice and would lead to an endless cycle of litigation which no protester would ever win," because "requiring the protester to rebut all of the reasons it would not have been awarded the contract is no different from requiring a protester to prove that it would have been awarded the contract but for the agency error." Plf's Br. filed July 27, 2000, at 4. This has not been and is not part of the legal standard for assessing whether the Government acted lawfully and reasonably when awarding a contract. Defendant readily admitted during the September 16, 1999 status conference:

> What do we do? What's the legal authority for now addressing [plaintiff's] compliance in other ways? But if the bottom line is the Court's job would be literally quadrupled to get into the four offers that [plaintiff] submitted as to whether they were technically compliant, when we've already found price as the reason they weren't prejudiced, why then evaluate their four other proposals for technical compliance?

Transcript of Proceedings, *Alfa Laval Separation, Inc. v. United States,* No. 97–536C, at 38 (Fed.Cl. Sept. 16, 1999) (hereinafter "Tr."); *see also* Def's Br. filed May 2, 2000, at 9. The Federal Circuit even noted that it "decline[d] to increase th[e] burden" beyond the requirement that a substantial chance be shown that a protester would have received the contract but for the violation. *Alfa Laval,* 175 F.3d at 1368.

The court considers the Government's actions, not those of the protester. The court does note that issues of plaintiff's compliance were raised at trial, and that the evidence indicated that plaintiff was not compliant in some respects. *See* Def's Br. filed May 2, 2000, at 10–11 (discussing trial evidence that showed plaintiff's noncompliance with solicitation); Int'r's Br. filed May 2, 2000, at 9–12 (discussing trial evidence and citing to trial transcript to show plaintiff's noncompliance with solicitation).

Plaintiff argues that the Federal Circuit's decision was clear as to the remand. The Federal Circuit, asserts plaintiff, found a prejudicial error entitling plaintiff to recovery. The remand, then, directed this court to supply the appropriate relief.[3]

---

2. Intervenor also argues that plaintiff should not be permitted to benefit from its "[f]ostering [t]he Federal Circuit's [i]nterpretation [o]f [t]he '[i]rrefutably [c]ompliant' [l]anguage." Int'r's Br. filed May 2, 2000, at 12. Although the court is troubled by the misrepresentation of the court's findings by plaintiff's counsel on appeal, this exuberance of advocacy or dereliction of an advocate's responsibility not to misrepresent the record is not a ground to deny recovery. *See generally Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 895 F.2d 1403, 1405 (Fed. Cir.1990) (cautioning as impermissible advocacy misquoting court's prior opinion). Intervenor's ire at plaintiff comes too late. Defendant's petition for rehearing (which plaintiff tendered to this court as an exhibit to its June 26, 2000 brief) brought this matter to the attention of the appeals court, which summarily denied the petition. However, it is true that defendant's brief requesting rehearing did not detail plaintiff's malefaction in the exquisite detail that intervenor brought to the task in its brief on remand.

3. Two parties assert that, under their respective positions, the court need not reopen the record. *See* Def's Br. filed May 2, 2000, at 7 ("[T]his Court may issue a revised prejudice determination that takes these different or additional factors into account, without need for further evidentiary proceedings."); Plf's Br. filed June 26, 2000, at 7 ("[T]he Federal Circuit did *not* intend that there be further factfinding or consideration of whether [plaintiff's] proposals conformed with the requirements of the RFP."). Intervenor sees no need for further proceedings because of an

Whenever a court on remand confronts the absence of consensus on what has been mandated, the course to be charted is one between Scylla and Charybdis. In this case entering judgment in favor of plaintiff validates the Federal Circuit's factual finding that plaintiff was prejudiced by the agency's unlawful action. This finding apparently rests on the Federal Circuit's earlier finding that "[plaintiff], an irrefutably competent supplier, submitted the only bid meeting all of the government's requirements." *Alfa Laval* 175 F.3d at 1368. The trial record and opinion are clear that this court made no such finding, as defendant argued in its benighted petition for rehearing. The Federal Circuit also declared that "[t]he trial court found that '[h]ad the evaluators correctly analyzed the data,' they would have found [plaintiff's] proposal 'irrefutably compliant.'" *Id.* (quoting *Alfa Laval*, 40 Fed.Cl. at 234). Although this court found that plaintiff was "irrefutably compliant" with regard to Type II test data, this court made no such finding concerning any other requirement of the solicitation.[4] Extrapolation from Type II test data compliance to overall compliance occurred only on appeal. This may have given defendant ballast to argue that, as the finding was incorrect, plaintiff should be required to prove on remand that it complied with all mandatory requirements of the solicitation.

Performing a further prejudice inquiry would be contrary to the express language of the Federal Circuit that the procurement error was prejudicial to plaintiff. The only other "surrounding circumstances" to which defendant and intervenor point revolve around plaintiff's compliance with the solicitation. The Federal Circuit expressly declined to increase the burden on protesters, and the court is bound to follow that ruling. "It is 'familiar doctrine that a lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid to rest.'" *Northern Helex Co. v. United States*, 225 Ct.Cl. 194, 197, 634 F.2d 557, 560 (1980) (quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 140, 60 S.Ct. 437, 84 L.Ed. 656 (1940)); *see also Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed. Cir.) ("[*United States v.] Cotef*, 51 F.3d 178 (9th Cir.1995),] reaffirms the general rule that, following appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion."), *cert. denied*, 525 U.S. 877, 119 S.Ct. 181, 142 L.Ed.2d 148 (1998). However, a lower court may resolve "matters left open by the mandate." *Lake Pleasant Group v. United States*, 40 Fed.Cl. 647, 653 (1998) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256, 16 S.Ct. 291, 40 L.Ed. 414 (1895)).

The issue of prejudice has been fully resolved by the Federal Circuit, despite the taint of ambiguity on which defendant relies. This court is left to enter judgment and to determine recovery. Defendant's and intervenor's recourse does not lie in this court on remand.[5] Because the appellate court determined that prejudice resulted from the procurement violation, plaintiff is entitled to injunctive relief.[6]

---

asserted failure by plaintiff at trial to prove its compliance; however, intervenor also leaves open the possibility of the need for further proceedings. *See* Int'r's Br. filed May 2, 2000, at 11–12 ("Should this Court wish, such issues could be further investigated through further findings of fact under the jurisdiction of this Court.")

4. *See also supra* note 2. The Federal Circuit's characterization of plaintiff as "an irrefutably competent supplier" may be true, *Alfa Laval*, 175 F.3d at 1368, but the observation did not emanate from the trial court's opinion.

5. Commentators contend that if uncertainty arises as to the soundness of the law of the case established by the higher court, a party should

not address its arguments to the trial court; rather, it should address the appellate court by petitioning for rehearing, by moving the appellate court to recall its mandate, or by appealing from the trial court's judgment on remand.

*Boeing Co. v. United States*, 31 Fed.Cl. 289, 293 (1994) (citation omitted).

6. One of the remedies discussed during the September 16, 1999 status conference was termination for convenience. Given defendant's representations that the Navy's requirements have been met during the period while the case was on appeal, and given that the parties chose not to brief the appropriateness of termination for convenience as a remedy, the court does not address the issue.

### 2. Availability of proposal preparation costs

#### 1) Plaintiff's complaint

In the complaint's prayer for relief, plaintiff did not expressly request proposal preparation costs. After appeal plaintiff raised the issue of entitlement to proposal preparation costs, and this issue was briefed on remand.

First, plaintiff contends that its prayer for relief was sufficiently broad to establish proposal preparations costs as one of the remedies sought by its complaint. Plaintiff charges defendant with notice of its intent to seek proposal preparation costs based on the following excerpt from its pretrial Memorandum of Contentions of Fact and Law:

1. Whether there was subjective bad faith on the part of the procuring officials thus depriving plaintiff of fair and honest consideration of its proposal;

2. Whether there was a reasonable basis for the procuring officials['] decisions;

3. Whether the procuring officials abused their discretion; and

4. Whether the procuring officials violated pertinent statutes or regulations.

Plf's Mem. of Contentions of Fact and Law, filed Oct. 24, 1997, at 1 (citing *Cincom Sys. v. United States,* 37 Fed.Cl. 663, 671 (1997)). To bolster this position, plaintiff relies upon *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978); *Lebron v. Washington Metropolitan Area Transit Authority,* 665 F.Supp. 923 (D.D.C.1987); and *Taylor v. Secretary of the Navy,* 852 F.Supp. 343 (E.D.Pa.1994), *aff'd, Taylor v. Dalton,* 61 F.3d 896 (3d Cir.1995). Plaintiff also points to RCFC 54(c), which provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleading."

■ A claim for proposal preparation costs is not a measure of damages for an unlawful procurement, but, rather, an independent cause of action with a different burden of proof. Plaintiff's position fails to recognize that the legal standards for injunctive relief and proposal preparation costs are not identical. For injunctive relief plaintiff must demonstrate arbitrary, capricious, or unreasonable action by the agency or action that is in violation of a procurement statute or regulation that substantially prejudices the offeror. *See, e.g., Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. 388, 392 (1999) (citing cases). The use of the disjunctive "or" is of import. For recovery of proposal preparation costs, plaintiff must demonstrate arbitrary, capricious, or unreasonable actions. *See E.W. Bliss Co. v. United States,* 77 F.3d 445, 447 (Fed.Cir.1996). The trial court made no findings as to whether the decision-making process involved arbitrary, capricious, or unreasonable actions by the agency. The remand did not address arbitrariness and capriciousness; instead, it focused, as this court has, on the prejudice related to the procurement violation. In *E.W. Bliss* plaintiff sought both to enjoin a procurement and, in the alternative, to recover bid preparation costs. 33 Fed.Cl. at 125 & n. 2. Failing the former, the case proceeded on the latter claim.

■ According to plaintiff, *Holt Civic Club* stands for the proposition that "the prayer for relief is not a necessary element of a claim, and 'omissions in a prayer for relief are not a barrier to redress of a meritorious claim.'" Plf's Br. filed June 26, 2000, at 11 (quoting *Holt Civic Club,* 439 U.S. at 66, 99 S.Ct. 383). The Supreme Court's concern was a claim presented in a manner such that the party may have been entitled to relief, but the claim did not appear in the prayer for relief. *Holt Civic Club* is not on point for this reason. To allow amendment after remand in this case would go beyond *Holt Civic Club* because plaintiff in this case did not put on a case for proposal preparation costs.

In *Lebron* plaintiff did not expressly plead claims based on delay and emotional distress. The court ruled that "[u]nder Fed.R.Civ.P. 15(b), the pleadings are considered to be amended to conform to the evidence presented at trial." 665 F.Supp. at 934. The court further stated in a footnote, relying only upon a treatise for authority, that a prayer for relief is not determinative of the "optimal recovery" so long as "the allegations of the complaint establish an entitlement to a par-

ticular remedy." *Id.* at n. 11. Although these principles are as true in the Court of Federal Claims as they are in federal district court, plaintiff's complaint and the evidence at trial did not amount to a showing of entitlement to recovery of proposal preparation costs. In proving that the Navy acted unreasonably, plaintiff would be met with the defense that plaintiff failed to comply with all mandatory solicitation requirements. Although such evidence was introduced at trial, defendant was not alerted to plaintiff's claim, and the record was not developed on point. Moreover, before the proofs were closed, plaintiff offered no evidence as to the amount or reasonableness of its proposal preparation costs. Such evidence is a necessary part of a claim for these costs.[7]

In *Taylor* plaintiff's complaint asked for "such other relief as may be appropriate." 852 F.Supp. at 357. The Navy sought to prevent plaintiff from recovering compensatory damages because he had not included such in his prayer for relief. The court ruled that "the Navy should not have been surprised to learn that [plaintiff] was planning to seek compensatory damages, and that the Navy has not been prejudiced by [plaintiff's] failure to demand compensatory damages explicitly in his pleadings." *Id.* Although plaintiff postulates that *Taylor* is similar to the instant action, the parallel is not so clear. *Taylor,* unlike in the instant case, involved multiple pretrial indications that plaintiff was seeking compensatory damages. In paragraph 24 of his amended complaint, in his verified statement incorporated into paragraph 19 of count I, and in his pretrial memorandum, plaintiff expressed damages that he was seeking in compensatory terms. The Navy even responded in its pretrial memorandum in a manner consistent with defending a claim for compensatory damages. In the instant case, no similar indicia of the type of damages that plaintiff was seeking were present. Defendant was not apprised of the fact that plaintiff wanted proposal preparation costs until after remand. Assuming that proposal preparation costs can be regarded as a measure of damages and not a separate cause of action, nothing prior to trial or during trial, including the lack of evidence of proposal preparation costs, put defendant on notice that proposal preparation costs were an issue being litigated. Plaintiff's complaint is not sufficient to garner an award of proposal preparation costs.

### 2) *Leave of court*

■ To recover proposal preparation costs, plaintiff would require leave of court to amend its complaint. *See* RCFC 15(a). Using its sound discretion, a court is to consider whether amendment of a complaint serves the interests of justice. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (holding that denial of amendment is within discretion of trial court); *E.W. Bliss,* 77 F.3d at 450 (affirming ruling that amendment would not serve the interests of justice). Leave to amend should be freely given, absent reasons such as undue delay, bad faith or dilatory motives, prejudice to the opposing party, or futility. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (discussing Fed.R.Civ.P. 15(a)). "The existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under such circumstances." *Spalding & Son, Inc. v. United States,* 22 Cl.Ct. 678, 680 (1991).

■ Defendant asserts that the delay in the request for proposal preparation costs and the futility of amendment should pretermit granting leave to amend.

Notwithstanding the view that Fed. R.Civ.P. 15(a) is to be construed liberally, courts have not hesitated to deny motions to amend that have been filed after signifi-

---

7. Defendant, relying on *Mitsui Foods, Inc. v. United States,* 867 F.2d 1401, 1404 (Fed.Cir. 1989), also advances the argument that amendment would be futile. When other grounds suffice to deny the motion for leave to amend, the court need not consider this argument. However, because the standards are different for the two claims and the court did not find arbitrary and capricious action by the Government—instead examining the prejudicial violation of an applicable procurement statute or regulation—the court sees much merit in the futility argument, given plaintiff's position that all of the issues have been litigated.

cant delay. Delay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings.

*Te–Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1262 (Fed.Cir.1991). Plaintiff, as the movant, bears the burden of showing that the delay was justified. *See Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed.Cl. 122, 132 (1996) ("[T]he Federal Circuit has adopted the rule that a party seeking to amend its complaint after significant delays bears the burden of justifying the delay.") Without an offer of justification, delay alone suffices for denial of a motion for leave to amend. *See, e.g., Carter v. Supermarkets Gen. Corp.*, 684 F.2d 187, 192 (1st Cir.1982) (affirming denial of motion to amend made six years after commencement of litigation where movant offered insufficient reason for delay); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir.1981) (affirming denial of motion to amend made on first day of trial—19 months after filing of suit and 33 months after filing charge with EEOC—when "delay passed unexplained"); *Spalding & Son*, 22 Cl.Ct. at 680–81 (denying motion to amend filed four years after commencement of suit because movant failed to offer explanation for delay).[8]

 Plaintiff relies upon *City of Columbia, Missouri v. Paul N. Howard Co.*, 707 F.2d 338 (8th Cir.1983), to argue that the resolution of an appeal does not necessary make a motion for leave to amend untimely and upon *Cornwall v. U.S. Construction Manufacturing, Inc.*, 800 F.2d 250 (Fed.Cir.1986), to assert that mere passage of time is an insufficient basis for denying a motion for leave to amend. Neither argument is persuasive.

First, from *City of Columbia*, plaintiff draws the following: "An amendment can be proper after remand to the district court even if the claim was presented for the first time on appeal or had not been presented to the district court in a timely fashion." 707 F.2d at 341 (citations omitted). The support

provided by this language is not substantial. It indicates only that "the court can permit ... amend[ment]." *Id.* It does not direct that the amendment should, ought, or must be accepted. Within the context of the *City of Columbia* opinion, "[i]t [was] not clear whether the district court ruled on [plaintiff's] tort claim.... [which plaintiff] did not present ... in the district court with the clarity it has presented the theory on appeal." *Id.* The court held that if the trial court intended to rule on the tort claim, summary judgment was inappropriate. In the alternative, the court held that if the trial court "did not rule on [plaintiff's] tort claim, that court should consider the claim in the first instance." *Id.* In the latter circumstance, "[i]f the court feels the issue had not been presented below, the court can permit ... amend[ment]." *Id.* The court's concern, then, was not whether plaintiff should be permitted to argue a new claim, but that plaintiff be heard on a claim it presented in an less-than-clear manner.

Second, plaintiff contends that "mere passage of time is not a sufficient basis for denying leave to amend." Plf's Br. filed June 26, 2000, at 14 (citing *Cornwall*, 800 F.2d at 253). The Federal Circuit in *Cornwall* was interpreting the law of the Eleventh Circuit, and not that applicable to the Court of Federal Claims. Not only is this statement narrower than that indicated by the Supreme Court, *see Foman*, 371 U.S. at 182, 83 S.Ct. 227 (discussing undue delay as opposed to prejudicial delay as one of a number of reasons for which leave to amend may be denied), and the Federal Circuit's more recent holdings, *see Te–Moak Bands*, 948 F.2d at 1261, it also fails to acknowledge the reason for the reversal of the trial court's denial of a motion for leave to amend. The Federal Circuit reversed "because the district court did not discuss the factors which the Eleventh Circuit considers important, [and because] it did not offer any justifying reason for its decision." *Cornwall*, 800 F.2d at 253.

---

8. Defendant's citation of *First Interstate Bank of Billings v. United States*, 61 F.3d 876, 881–82 (Fed.Cir.1995), does not bear the import that defendant ascribes to it. In its brief discussion of the motion to amend, the Federal Circuit made no mention of whether the trial court assessed defendant's justification, if offered, of its delay in seeking leave to amend. The court only determined that the trial court did not abuse its discretion.

Further, even if plaintiff's support were on point, plaintiff failed to provide the required justification for its delay. Merely proving that other cases allowed longer delays or delays until appeal or thereafter does not suffice to demonstrate entitlement to amendment. Delay must be justified. *See Cupey Bajo Nursing Home,* 36 Fed.Cl. at 132. Plaintiff offers the following:

> [T]he Government does not identify in any way when, prior to these proceedings on remand, [plaintiff] should sensibly have, unjustifiably neglected to, or even could have moved to amend its complaint. Certainly, it made no sense for [plaintiff] to file such a motion after this Court ruled that [plaintiff] had not been prejudiced and was therefore not entitled to relief. Nor could [plaintiff] have moved to amend its complaint while the case was on appeal. Consequently, unless [plaintiff] is to be barred forever from amending its complaint because it failed to do so before the trial ended ... the first time [plaintiff] could logically have moved to amend its complaint was on remand, when the parties, at the Court's suggestion, undertook to brief this issue.

Plf's Br. filed July, 27, 2000, at 6–7. While this explains why leave to amend was not sought earlier, plaintiff has not justified its failure to plead a claim for proposal preparation costs or to seek leave to amend before the close of proofs. It is instructive that some plaintiffs seeking the injunctive relief that plaintiff originally sought also include in their complaints the prayer for proposal preparation costs. *See, e.g., E.W. Bliss,* 33 Fed.Cl. at 125 & n. 2.

The court is unpersuaded by plaintiff's arguments that a showing of prejudice is required to prevent the free grant of a motion for leave to amend. Case law recognizes that delay alone may suffice as a reason for denying a motion for leave to amend. However, even if prejudice were required, defendant has demonstrated that it would be prejudiced by an amendment to include proposal preparation costs. These costs were not subjected to the crucible of trial, and the mandate to conduct "further proceedings" did not envisage reopening the record either to

prove recovery of proposal preparation costs as a new cause of action or to introduce evidence of damages measured by such costs.

Finally, plaintiff makes a plea that the under the circumstances of this case justice requires the granting of leave to amend. Plaintiff highlights that, from its perspective the Federal Circuit has found a prejudicial procurement violation, that plaintiff's funds spent in preparing its proposal were wasted, that the Navy has purchased and paid for all of the purifiers that it needed under the contract with intervenor, and that plaintiff would be denied all compensation for injuries suffered at the hands of the Navy. Although all of this may be true, plaintiff could have prevented the Navy from procuring under the contract, but chose not to do so. Instead of prosecuting its application for a temporary restraining order, plaintiff agreed that intervenor could continue to manufacture purifiers pending this court's decision. Four purifiers were completed and delivered to the Navy by the time the parties were briefing the appeal. None have been ordered since. Moreover, plaintiff could have filed for an injunction pending appeal. Because plaintiff could have engaged mechanisms to prevent the Navy from procuring the purifiers during the trial and appeals processes, but did not, justice does not now require that plaintiff be entitled to some other form of relief.

Plaintiff expected to be victorious on its injunction claim and therefore did not seek to recover proposal preparation costs as part of the court-ordered relief. This expectation, though, did not foreclose plaintiff from pleading a claim for proposal preparation costs. The two-year delay before seeking amendment was undue. Plaintiff also has not carried its burden of justifying the delay. Based on the untimeliness of the request, the interests of justice are not served by permitting an amendment of the complaint, or a broader reading of the generic prayer, to permit recovery of proposal preparation costs. Accordingly, leave for plaintiff to amend its complaint to include a prayer for such relief is denied.

## CONCLUSION

The Federal Circuit's prejudice finding requires the granting of an injunction foreclos-

ing further Navy purchases from intervenor under the subject contract. Plaintiff has failed to demonstrate that its complaint and pretrial brief were sufficient to put defendant on notice that proposal preparation costs were at issue, thus requiring amendment of the complaint to obtain this relief after remand, nor has plaintiff justified the delay between the filing of the injunction and the motion for leave to amend after remand. These deficiencies are fatal to plaintiff's efforts to recover proposal preparation costs. Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant, by and through the Department of the Navy, its officers, agents, and employees, is enjoined permanently from making further orders under the subject solicitation and contract to any entity other than Alfa Laval Separation, Inc.

2. Plaintiff's motion to amend its complaint to include a request for proposal preparation costs is denied.

3. The Clerk of the Court shall enter judgment for plaintiff consistent with the foregoing.